each side has 10 minutes. Good morning. Good morning. May it please the court. My name is May Malari and I represent Plaintiff Appellant Gwynevere Dale Woods. The issue before this court is whether the district court erred in granting summary judgment to defendants. The record below clearly demonstrates that the district court erred in several ways. First, it improperly usurped the role of the jury by making factual determinations where genuine issues of fact existed. Second, the district court stated on the record that it had made the ultimate conclusion that plaintiff's conduct amounted to extortion and that that's what was driving much of the analysis by the court. Third, that the district court deprived plaintiff of a full and fair opportunity to present evidence of pretext. Fourth, that it failed to consider in its analysis numerous triable issues of fact raised by plaintiff including the fact that she was sexually assaulted. And fifth, that the district court failed to properly apply the relevant substantive law governing the issues. For these reasons, the district court's decision should be reversed in its entirety. I'd like to first address the retaliation claims which also encompasses the wrongful termination claim. With respect to the retaliation and wrongful termination claims, plaintiff presented specific and substantial evidence of retaliation which makes summary adjudication of these claims inappropriate. Normally, in a retaliation claim, you have a whistleblower and who blows the whistle on the employer of wrongful discriminatory conduct by the employer and that's the reason for the case and the reason for the adverse employment situation. Here, of course, it doesn't involve whatever happened with the groping, as I call it, didn't involve the employer and it's an unusual aspect of retaliation, isn't it? Well, Your Honor, in this case, plaintiff engaged in protected activity by protesting unlawful conduct. Although the court makes the distinction that the conduct did not involve the employer, from a legal matter, there is case law under both state and federal authorities which, under the circumstances and based on the facts presented, would make the employer liable even for ratifying the conduct, harassing conduct on the part of a third party. There's certainly no ratification here. Well, Your Honor, that's a question of fact as to whether there was ratification in light of the numerous facts presented by plaintiff with respect to Ms. Ross' role as a supervisor and her being a direct participant and contributing to the sexually hostile, sexually charged environment which eventually resulted in the sexual assault that was perpetrated against Ms. Woods. Your Honor, what bothers me in particular in this case is that, you know, we have a protected person, a woman, who's employed, doing her job and she gets fired and we'll say she makes a prima facie case somewhere. On the other hand, the employer comes back and says, we feel that she was involved in extorting money and it is a violation of our conflict of interest rules. And now the employee has to come back and show under Greenview McDonnell Douglas, has to show that that was a pretextual reason. Now, it doesn't mean you have to have a rebuttal, it means that concerning the whole record. And I have difficulty finding in the record that the employer's reasoning doesn't stand up and there's no showing a pretext. Your Honor, I respectfully disagree. I feel that plaintiff presented ample facts to support retext of which most of which the district court failed to consider. To begin with, the district court didn't even consider the temporal proximity between the protected activity and the adverse actions here. And in this case, it was very short, being only two months from the time Ms. Woods complained to the time she suffered, to the time she was terminated. This court has repeatedly recognized that timing is highly probative and strong evidence of retaliation. In addition, another piece of evidence to show pretext is focusing on who the decision makers were in the case. Here, Ms. Margaret Reynolds was a person who was supposed to be investigating Ms. Woods' complaints. Suddenly, in the midst of supposedly investigating Ms. Woods' complaints, she turns around and launches an investigation against Ms. Woods, which eventually leads to Ms. Woods' termination. There's an inference there that Ms. Reynolds had some sort of animus towards Ms. Woods because of the complaints that she had brought to her attention. In addition, the whole basis and circumstances and manner in which the investigation was conducted by Ms. Woods is suspicious under the circumstances. Here, Ms. Reynolds only relied upon information provided by Mr. O'Keefe to make the decision to terminate Ms. Woods. Here, in the context of all the events that occurred, Mr. O'Keefe is the one person who has every interest in making plaintiff and her complaints go away. Ms. Reynolds did not speak to Mr. Coley, nor did she interview Ms. Woods, the two people who would have been able to provide an explanation as to the email at question and the email that was eventually relied upon to terminate Ms. Woods' employment. In addition, plaintiff also presented evidence that despite two months passing, Ms. Reynolds made no final determination as to the complaint that Ms. Woods had brought to her attention, yet... Answer me this, O'Keefe is, he's not the perpetrator of the assault, but he's the leading member of that law firm, is that it? That's correct, in which Mr. Cobb was employed. Does your client ever deny that she demanded money and that she'd drop everything if she got it? Those are two different questions. In terms of whether she denies that she demanded money, she denies that she demanded money in the context of using it as leverage against the company. Now, her negotiating her claims through her attorney, Mr. Coley, is something that she had a legal right to do. That's not something that was illegal under the law. In fact, the law provides for a person to pursue their remedies when they've been wronged in the manner that she was. And with respect to, Your Honor, could you repeat your second question? Well, that she said she would drop the charges if she got the money. That was actually a term that had, from the get-go, been proposed by Mr. O'Keefe. All the terms that were contained in the letter, excepting the $50,000 settlement, were terms that Mr. O'Keefe had proposed from the very beginning of their discussions. Well, the email, the import of this is that she says, I will expose to the company what Cobb did unless you pay me money. Right? I mean, that's what their investigation reveals. I will make trouble for you with Chubb unless you cough up a sizable amount of money. That's what their position is. That's not what the letter says. The letter could equally be. Well, even if they're wrong about their assessment of it, that's their business judgment. I agree with that, that even if they're wrong, that's the legitimate, non-discriminatory reason that they've offered. However, a plaintiff still needs to be given a fair opportunity to provide evidence of pretext, which in this case we have. We contend that we have. You have temporal proximity, which is they fired her right after she made this extortionate demand, if that's the way they're going to characterize it. What else have you got? Well, we've got also the manner in which this predetermined investigation was conducted by Ms. Reynolds, someone who was very involved in investigating Ms. Woods' complaint. I don't understand that argument. I don't know why Reynolds can't investigate what happened at the restaurant and also investigate whether Woods is trying to shake down the law firm. Our contention is that the manner in which Ms. Reynolds investigated Ms. Woods' conduct was in a predetermined manner, the inference being that Ms. Reynolds held some sort of animus against Ms. Woods for her complaint. I don't see any evidence. Where's the evidence that there was any animus towards her? Well, we've got the fact that the manner in which the whole investigation was conducted, she didn't do it in a way which would have extrapolated a alternative explanation as to what the events were concerning that email. In addition, Ms. Reynolds sat upon the complaint that Ms. Woods made for two months without making any determination, yet when it came to this investigation that she initiated against Ms. Woods, she was able to initiate the investigation, conduct it, make a determination, and terminate Ms. Woods within a matter of a month. I think that, at minimum, lets a trier of fact to determine whether the real reason for the adverse actions, in this case, were legitimate or not. Thank you, Ms. Malari. Thank you. We'll now hear from the appellee. Good morning, Your Honor. Good morning. Could you pull the mic up a little? Sure. I'm a little bit tall. May it please the Court. I have the same problem. Thank you. It is a problem sometimes. May it please the Court. Laura Shelby from CIFAR Shaw on behalf of the defendant and appellees in this action. Your Honor, we're here because Judge Pragerson granted a motion for summary judgment on a case where the material facts were not in dispute. Appellants argue that whenever there's facts involved and then there's some dispute, you can't grant summary judgment. Well, Your Honor, summary judgment would never be granted because every case involves facts. What was compelling in this case is that the undisputed facts that were material led to no other conclusion than Ms. Woods engaged in an extortion attempt. And that is what the judge saw and that is what the documents say. And there was no other conclusion. And that was the main reason Chubb was brought a lawsuit against was because of the termination. When you say extortion, though, certainly this plaintiff was entitled to pursue some basis for charge and may need compensation against this lawyer. And I don't know why. I guess it was against the law firm totally. Now where does the extortion, tell me where the extortion comes in. Is it in the amount of money she wanted, which I think was up to $150,000? Is that part of it? And what about this claim that if you don't pay up, we're going to go to Chubb and tell him what bad guys you lawyers are? Let me answer that question. Two questions. Two questions. Ms. Woods was a claim analyst for Chubb. What Chubb does is enter into relationships with law firms, third parties, to handle lawsuits for them. Chubb gives business to these third parties' law firms, okay? It is that law firm that was taking Ms. Woods and other Chubb people out to dinner. She then accused one of the attorneys of harassment, told Chubb about it as well, but without letting Chubb handle it, got her own attorney, who immediately started negotiating for money with the law firm, which was a third-party vendor for Chubb. That in of itself, Your Honor, was not a problem. And if she had stopped there, we would not be here today. But when the law firm refused to pay six figures for what had happened at this single dinner, she and her attorney took it to the next level. Mr. O'Keefe, the partner at the Bonnie Bridges firm, says that Ms. Woods' attorney said to him, listen, you better reconsider paying her six figures, and I'm going to send you something in writing that I think will make you reconsider. And he did send her something in writing. What did he send the law firm? An e-mail written by Ms. Woods, signed by Dale Woods, Chubb claims analyst, not her personal stationery, where she repeats all the horrible things that went wrong, and at the bottom says, because you failed to really appreciate the gravity of the harm here, we will instruct, we're going to ask Chubb to sever all business ties, meaning you don't pay me the money or I'm going to sever the business ties. Mr. O'Keefe gets this, immediately feels he's being blackmailed. He calls her bluff. He tells Chubb and forwards the e-mail authored by Ms. Woods. What does Chubb do? The first thing they do is they tell Ms. Woods, wow, we got this e-mail. And I think it's a compelling, undisputed fact what her response is. Oh, tear it up. The matter's been resolved. That day, within hours, her attorney sends a second letter to Mr. O'Keefe saying, okay, we'll settle for $50,000, and in exchange, we'll tell Chubb that the matter's resolved and no further action is needed. Once again, underlying the quid pro quo here, you pay me $50,000, I'll tell Chubb we're done. They do meet with Ms. Woods for over an hour and talk to her about the e-mail and the letter. And just for the record, that's in the excerpt of records 133 to 137 because they just claimed that they didn't talk to her. Ms. Woods admits, and this was to your point, that she authored the e-mail and that she authorized the letter. There's no dispute. Chubb has a very strict conflict of interest policy, which is understandable given the nature of their business. Ms. Woods admits she knew about it, and she admits that this conduct was in violation of that policy. What's the policy, again? There can be no appearance of a conflict of interest from a Chubb employee leveraging their position in employment at Chubb for personal gain. And it was the fact that she leveraged her position at Chubb for money. Did the rules say conflict of interest? You cannot use your position at Chubb for personal gain? Exactly. And that's in the record. It says exactly that. And they fired her shortly thereafter. The only thing that they point to as to evidence of pretext, one is the timing. That might be probative, except you have this intervening extortion scheme, and that's what causes it. And secondly, they point to Ms. Reynolds as also being involved in the secondary investigation. They're just misconstruing the law. There are cases that say if the person accused of harassment is then involved in the termination decision, that could be evidence of pretext. But Ms. Reynolds is never accused of harassment. She's an HR person investigating these facts. And then when she gets the additional information about the extortion, she continues her investigation. I just want to spend the second part of this is they're still trying to pursue a sexual harassment claim against Chubb. She already pursued that lawsuit against the law firm and got $40,000 and released those claims. Now she's turning around for the first time and saying that her female supervisor who attended this dinner also sexually harassed her and created an abusive, hostile work environment. There's no dispute about what the legal standard is. Was that in this case? Yes, that's on appeal as well. There's no dispute about what the legal standard is. This female supervisor was her supervisor for 10 months. Nothing ever happened. At the dinner, she claims that she overheard repartee and talk about cats having sex in Viagra, and that alone is enough to create a hostile and abusive work environment. Even though in the same breath she admits that when she told Ms. Ross the next business day that she felt that this attorney had harassed her, Ms. Ross was sympathetic and they immediately investigated. There's just no basis to hold Ms. Ross accountable for sexual harassment, yet they still are also trying to hold Chubb accountable for this third-party attorney. The only way they can do that is if there was some ratification on behalf of Chubb's part. This is another undisputed fact that was before Judge Pragerson. The day that Ms. Woods tells them, I feel like I was harassed, they immediately launch an investigation, and she never sees this attorney again. This is the unusual bright-line case where there's no dispute that the conduct stopped and that we handled it appropriately. It never happened again. You can't find Chubb responsible for third-party harassment under those scenarios. I have another question, not relevant, but I'd like to know. Was this $40,000 a settlement or was that a jury award? Oh, it was a settlement. After she was fired, she filed a lawsuit and got $40,000 in settlement. Yeah, there was no jury decision. This last little piece in the argument I want to address is they try to say that the supervisor, Jane Ross, should have had some type of psychic powers during the dinner and should have divined that Ms. Woods was feeling sexually harassed, and her failure to do that creates liability for Chubb. That's just an absurd argument. The minute she knew, Chubb acted promptly, and Judge Pregerson evaluated the entire record that's before the court now. They've mentioned several times they think he didn't consider everything. He did consider everything. This was just the rare employment case where the undisputed facts warranted summary judgment. Thank you, Your Honors. Thank you, Shelby. Ms. Murray, you've really got time. We'll give you a minute in rebuttal if you'd like it. Thank you, Your Honor. Just very briefly, everything that defendants' counsel just said raises a question of fact. There's an alternative explanation as to all the events that defendants' counsel just went through. Therefore, this issue needs to be left to the trier of fact to decide. Let me ask you a question. It seems to me there's a difference between saying pay me a lot of money or I'll sue you, on the one hand, and pay me a lot of money or I'll screw up your business relationship with the insurance company, on the other hand. What's your reaction to that? Well, the later one, that's one interpretation of the way the email could be construed. The other interpretation is that this is a woman who was saying, I want you to boycott this company because this company condones demeaning treatment of women in the workplace, and that's the alternative explanation, and that's our point here. Thank you very much. Thank you, Your Honor. Ms. Lord, Ms. Shelby, thank you. The case to start is submitted.
judges: Bright , B. Fletcher, Silverman